**SO ORDERED.**
**SIGNED this 24 day of August, 2017.**

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**FAYETTEVILLE DIVISION**

**IN RE:**

| | |
|---|---|
| **RUSSELL REGENHARDT, JR.** | **CASE NO. 17-01225-5-JNC** |
| **REVA REGENHARDT** | **CHAPTER 13** |
| **DEBTORS** | |

**ORDER DENYING TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTIONS**

The matter before the court is the chapter 13 trustee's objection to the debtors' amended claim of exemptions (Dkt. 21, amended at Dkt. 22; together, the "Objection") filed June 1, 2017. The debtors responded in opposition to the Objection on June 9, 2017 (Dkt. 25; the "Response"). An evidentiary hearing on the Objection and Response took place in Raleigh, North Carolina on August 3, 2017. The testimony and exhibits presented were largely uncontested, and the facts established from the pleadings and at the hearing are summarized below.

**BACKGROUND**

Russell Regenhardt, Jr. and Reva Regenhardt (the "Debtors") filed a joint petition for relief under chapter 13 of the United States Bankruptcy Code on March 13, 2017. The petition indicates that the Debtors physically reside in a house occupying a lot with a street address known as 3470

Floyd Drive, Hope Mills, North Carolina (the "House Lot"). Contiguous to the House Lot is an additional lot of real estate jointly owned by the Debtors bearing a street address known as 5724 Crenshaw Drive, Hope Mills, North Carolina (the "Adjacent Lot"). Although the House Lot and Adjacent Lot (together, the "Real Property") reflect two different street names in their respective addresses, geographically the two lots form an "L" shaped single parcel, as the House Lot is at the corner of Floyd Drive and Crenshaw Drive and the Adjacent Lot sits in the middle of the block facing Crenshaw.

The Debtors bought the House Lot (with the home already on it) from Charles and Kathleen Lewis on March 25, 1993, by deed recorded at Book 3930, page 495 in the Office of the Register of Deeds for Cumberland County, North Carolina (Debtors' Ex. 2). They acquired the Adjacent Lot from Mrs. Regenhardt's mother, Ethel Gray Warren, by gift deed recorded April 23, 2004, at Book 6500, Page 360 in the Office of the Register of Deeds for Cumberland County, North Carolina (Debtors' Ex. 5). Mrs. Warren acquired the Adjacent Lot from Mr. and Mrs. Lewis on March 25, 1993, the same day the Debtors obtained the House Lot. S*ee* Debtors' Ex. 3. Mrs. Warren originally intended to build a retirement home upon that property, but sometime during the ensuing ten years, she changed her mind and deeded the still vacant property to the Debtors. According to the testimony, no permanent building or other structure exists upon the Adjacent Lot, and during all times in the nearly quarter-century that either the Debtors or Mrs. Warren owned the Adjacent Lot, it has been used in tandem with the House Lot as discussed below.

In their bankruptcy petition (Dkt. 1), the Debtors list a value for the House Lot of $125,000 on Schedule A/B (Dkt. 1 at 11). Schedule D (Dkt. 1 at 29) notes two encumbrances against the House Lot, the first to Midland Mortgage with a petition-date balance owed of $41,729 and the second to Ocwen Loan Servicing with a petition-date balance of $43,333. If accurate, and neither the value

nor the lien amounts were contested at the hearing, the payoff balances of the liens total $85,062. Consequently, at the $125,000 uncontested valuation, the House Lot would have equity of $39,938. Schedule A/B lists a value of $20,000 for the Adjacent Lot, which amount also was not contested. Schedule D lists no lien against the Adjacent Lot.

In the Debtors' Schedule C contained in the petition, Mrs. Regenhardt elects to apply $20,000 of her up to $35,000 residential exemption available under North Carolina General Statutes § 1C-1601(a)(1) for real estate used as a debtor's primary residence (the so-called "Homestead Exemption") in an effort to exempt the Adjacent Lot in full. She then applies $4,938 from her available Homestead Exemption balance to the House Lot. In his separate Schedule C filing, Mr. Regenhardt uses his maximum Homestead Exemption to exempt $35,000 of equity in the House Lot. When coupled with the $4,938 exemption attributed by Mrs. Regenhardt, the Debtors together place a total Homestead Exemption claim of $39,938 upon the Real Property in order to protect its full asserted equity. Therefore, in the initial schedules, the Debtors seek to treat the Real Property as one combined residential unit and exempt it in full through specified allocations of their respective Homestead Exemptions.

The trustee objected to the Regenhardts' exemptions on the basis that only the House Lot constitutes their residence or homestead, and that given the ten year difference in acquisition dates and the lack of a permanent residential housing structure, the Adjacent Lot is not subject to protection under the Homestead Exemption. He contends that instead the Debtors must reduce their Homestead Exemption to $30,000 each and thereby create two $5,000 "wildcard" exemptions under North Carolina General Statutes § 1C-1601(a)(2) to apply to the Adjacent Lot. If the trustee is correct, and based upon a $20,000 value for the Adjacent Lot, that amount (less any available exemption) must be accounted for and paid by the Debtors over the life of their chapter 13 plan.

The trustee does not object to the full exemption of the House Lot under the Homestead Exemption. The Debtors contend that the Real Property is in fact one combined unit and that their aggregate available Homestead Exemption covers all equity in the two lots, whether valued separately or together.

At the hearing, Mr. Regenhardt testified at length concerning the present and historical use of the Adjacent Lot in conjunction with the home situated on the House Lot. He maintains that even before the Adjacent Lot was gifted from his wife's mother, it was used as an extension of the House Lot residential yard. As described at length in his testimony and buttressed by numerous photographs introduced into evidence without objection, present and past residential use by the Debtors and their family includes the following items located on the Adjacent Lot and its enjoyment by them:

(a) An above-ground swimming pool built approximately six years ago;
(b) A portion of the driveway beginning on Crenshaw Drive carrying over to the carport attached to the home on the House Lot;
(c) A pet cemetery contained within a garden plot;
(d) Numerous azaleas, other ornamental plants, and vegetable garden;
(e) A playhouse, fort, and swing set playground area;
(f) Cars are parked on the Adjacent Lot with regularity;
(g) A badminton, lawn tennis, and volleyball court;
(h) Duck and rabbit pens;
(i) Picnic tables and outdoor barbecue grills; and
(j) A fence bordering the side and back neighbor home lots.

## DISCUSSION

Section 522 of the Bankruptcy Code provides that a debtor may choose to claim exemptions under either federal law (as set forth in § 522(d)) or applicable state law, unless the applicable state law "does not so authorize." 11 U.S.C. § 522(b). North Carolina is an "opt out" state, meaning that debtors who are domiciled in North Carolina must claim exemptions under North Carolina law rather than elect to use the federal exemptions. Because the Debtors have

resided in North Carolina at all relevant times, North Carolina law is the "applicable law" for purposes of § 522 and requires that its residents in bankruptcy adhere to the North Carolina statutory exemption regime. N.C. GEN. STAT. § 1C-1601(f); *see also In re Cook*, No. 02-11321, 2003 WL 21790296, at *2 (Bankr. W.D.N.C. Mar. 4, 2003).

North Carolina General Statutes § 1C-1601(a)(1) governs the exemption of real property used as a residence. It provides that:

> [e]ach individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:
> (1) the debtor's aggregate interest, not to exceed thirty-five thousand dollars ($35,000) in value, in real property or personal property that the debtor or a dependent of the debtor . . . *uses as a residence*.

N.C. GEN. STAT. § 1C-1601(a)(1) (emphasis added).

The purpose of the North Carolina residential exemption is "to secure debtors and their families the shelter of a homestead." *Cook*, 2003 WL 21790296, at *4. To determine if a particular piece of real property is subject to the residential exemption, the court must consider the actual use of the property on the petition date. *See In re Love*, 42 B.R. 317, 319 (Bankr. E.D.N.C. 1984), *aff'd*, 54 B.R. 947 (E.D.N.C. 1985) (explaining that "North Carolina law clearly provides for a residential exemption which is conditioned upon continued use as a residence and continued ownership. If the exempt residence ceases to be used as a residence . . . the property is no longer exempt").

This court has considered the issue of whether adjoining parcels can both be "used as a residence" in two recent cases. First, the case of *In re Stox*, No. 10-08123-8-RDD, 2011 WL 5902882, at *6 (Bankr. E.D.N.C. May 27, 2011), presented a debtor who was seeking to exempt three adjacent parcels of real estate – a 4.470 acre tract, a 1.451 acre tract, and a .930 acre tract. Four mobile homes were situated on the three tracts, in which resided the Debtor and various

members of her immediate family. The debtor's actual home was located on the 1.451 acre tract and no objection was filed as to it. The trustee objected to the claim of an exemption in the other two tracts.

At hearing, the evidence showed that the debtor's disabled son, an unemployed daughter, and other relatives lived in three other mobile homes located on the two adjoining parcels. The properties shared a driveway, and vegetable gardens, grapevines and fruit trees that helped feed family members were located on the properties. The court allowed the exemption claim to the extent funds were available, concluding:

> Although the tracts were acquired at different times, they were all acquired to serve the principal residence. All three parcels are linked to the support, existence, or enhancement of the residential property, especially in the rural setting in which the property was acquired.

*Stox*, 2011 WL 5902882, at *8.

On the other hand, in *In re Rogers*, No. 16-02884-5-JNC, 2016 WL 5794707, at *4 (Bankr. E.D.N.C. Oct. 3, 2016), this court declined to extend the homestead exemption to two adjacent lots. In that case, the first lot containing the debtor's house was not challenged. However, a small cinderblock building, first used as a country store and then as a rental home at the time the case was filed, sat on the second lot. The rented lot and the debtor's home were obtained by the debtor as one parcel of real property, and subsequently were formally subdivided into two parcels in part to facilitate a real estate refinancing. The rental income from the second parcel was used in part to pay annual insurance and county ad valorem taxes on the actual homestead lot. As the trustee argues here, the debtor in *Rogers* took the position that the original acquisition of two lots at the same time and their contiguous nature was sufficient to establish one homestead and exemption eligibility. The court disagreed, focusing on the actual use of the two lots on the petition date, not the acquisition date. The evidence presented by Ms. Rogers did "not establish any overlapping use

of the properties." *Id.* at *4. Further, renting the second lot showed a pecuniary rather than residential use of that parcel regardless of how the funds were ultimately spent. The request to include the second lot within the homestead exemption was denied.

The controlling factor in both *Stox* and *Rogers* was the actual use of the subject properties through and as of the petition date, not a past simultaneous acquisition in one deed. Nothing in the North Carolina statute or the Bankruptcy Code provisions indicate that in order to be subject to the residential homestead exemption, two contiguous pieces of real property actually used by a debtor for residential purposes must have been acquired at the same time, or that the physical house structure must sit on both parcels. If used in tandem as of the petition date, the exemption could be claimed in the second property. In the absence of such use, the exemption extension would be denied.

Here, the testimony of Mr. Regenhardt sets out at least ten categories of use of the Adjacent Lot that, taken together, show a clear and consistent residential use of that real estate parcel. The numerous photographs entered into evidence illustrated and buttressed his points with specific and discernable examples. Weighing against those ten categories are the different acquisition dates and street address names of the two lots. The street names are explained by the L-shaped nature. To the extent that the Debtors' acquisition of the Adjacent Lot ten years after buying the House Lot could conceivably outweigh the actual use of the property over many years, any resultant presumption is further weakened by the fact Mrs. Warren (Mrs. Regenhardt's mother) acquired the Adjacent Lot the same day that the Debtors bought the House Lot, and that the Debtors have essentially used the property as their own since then.

The Adjacent Lot easily fits within the definitions of "debtor's principal residence" and "incidental property" under both the Bankruptcy Code and as that term is used in the North Carolina exemption statutes. The testimony, photographs, and documentary evidence presented at the hearing

overwhelmingly establish a more than twenty-year history of overlapping and complementary use of the Adjacent Lot and House Lot. The Adjoining Lot is necessary for the support, existence, or enhancement of the residential property as described in *Stox*. If offered for sale, both lots would likely be sold together as the Adjacent Lot enhances the use and enjoyment of the House Lot and logically increases its value. The Adjacent Lot and House Lot constitute one unit of residential real property, and the Regenhardts are entitled to exempt the two parcels in their entirety, if the Debtors correctly assign their available exemptions.

Unfortunately for the Debtors, under the case's current posture, Mr. Regenhardt appears to have attempted to use a total of $40,000 in combined exemptions under North Carolina General Statutes §§ 1C-1601(a)(1) and (2), which imposes a $35,000 combined cap.[1] As discussed above, the unchallenged equity in the House Lot was set at $39,938, and the separate Schedule C forms filed by Mr. and Mrs. Regenhardt in their joint bankruptcy petition covered that amount by allocating the full $35,000 homestead from Mr. Regenhardt's Schedule C section 1 (Dkt. 1 at 21) and $4,938 from Mrs. Regenhardt's Schedule C section 1 (Dkt. 1 at 25). However, in his original Schedule C section 8, Mr. Regenhardt also attempts to use $1,100 of wildcard exemption pursuant to North Carolina General Statutes § 1C-1601(a)(2) to cover a portion of the $4,600 value in a 2005 Chevrolet Trailblazer automobile (Dkt. 1 at 22) after first applying the $3,500 automobile exemption provided by North Carolina General Statutes § 1C- 1601(a)(3). Because he claimed the full and used the full $35,000 Homestead Exemption on the House Lot, Mr. Regenhardt did not have $1,100 available to allocate to the automobile or any other property.

---

[1] Under the North Carolina statutory scheme, the wildcard exemption is only available to the extent the full homestead exemption is not claimed. Each dollar used for the wildcard exemption requires a commiserate reduction in the homestead exemption. Thus, if an individual claims the entire homestead exemption, nothing remains to claim a wildcard exemption upon. Similarly, if the wildcard exemption is claimed in full, the homestead exemption then may not exceed $30,000.

To make matters worse, on May 19, 2017, Mr. and Mrs. Regenhardt filed an amendment to their bankruptcy schedules to list another parcel of real property and attempt to exempt it, at least in part. *See* Dkt. 18 (the "Amendment"). The additional asset consists of a one-third undivided interest in a parcel of real estate consisting of 0.18 acres bearing Cumberland County. North Carolina tax parcel identification number 0436-25-2645 inherited by Mr. Regenhardt from his deceased mother (the "Inherited Lot"). In that filing, Mr. Regenhardt asserts a value of $5,000 for the one-third interest, and then apparently attempts to exempt some portion of its value by allocating part of his homestead exemption. In paragraph 4 of the Amendment, he less than clearly states:

> 4. Schedule C and EDNC Schedule C are amended to add to any property up to statutory limit in NCGS lC-1601(a)(1):
> The male Debtors 1/3 interest in .18 Acres Heirs property listed in Schedule A value at $5,000.00 - $3,900.00 exempt.
> No further Amendments are made to the Debtors Schedule C and EDNC C.

If Mr. Regenhardt is attempting to exempt $3,900 of the Inherited Lot's $5,000 value, he has not succeeded in doing so. First, the amendment cites to the statute providing for the Homestead Exemption (N.C. Gen Stat. § 1C-1601(a)(1)), but Mr. and Mrs. Regenhardt do not reside in or even near the Inherited Lot, as it is located several miles away. Unlike the Adjacent Lot, it is not part of their homestead, nor did he make that contention in testimony given at the hearing. There was also no evidence that the Inherited Lot is used as the residence of any dependent of the Debtors. Unlike the Adjacent Lot, the Inherited Lot is not part of their homestead, nor did Mr. Regenhardt make that contention in his testimony given at the hearing.

If the Debtors intend to use Mr. Regenhardt's $5,000 wildcard exemption to cover $1,100 of equity in the automobile and $3,900 of equity in the Inherited Lot and still retain a full exemption for the $39,938 equity in the House Lot, Mr. Regenhardt must first reduce his

homestead exemption by $5,000 and Mrs. Regenhardt must amend her Schedule C homestead exemption to replace the $5,000 reallocation. She has not done so yet, and the attempt in the Amendment is inadequate and does not accomplish any of these goals in its paragraph 4, which standing alone is nonsensical in the setting of this case. The exemptions of the Debtors must be amended again to accomplish their apparent goals.

## CONCLUSION

Based on the foregoing, the trustee's objection to the Debtors' claim of a homestead exemption in the Adjacent Lot is allowed in part and denied in part as follows:

1. The objection is OVERRULED as to the Adjoining Lot, and an exemption claim of $20,000 asserted therein by Mrs. Regenhardt made pursuant to North Carolina General Statutes § 1C-1601(a)(1) is ALLOWED.

2. The objection is SUSTAINED as to the exemptions of Mr. Regenhardt asserted pursuant to North Carolina General Statutes § 1C-1601(a)(2) in the amount of $1,100 in the 2005 Chevrolet Trailblazer automobile in his original Schedule C and $3,900 (or any other sum) in the Inherited Lot in paragraph 4 of the Amendment, and his exemption claims as to the same are DENIED. No wildcard exemption is available for him absent a corresponding reduction in his homestead exemption.

3. Nothing contained herein shall prevent the Debtors from amending their claims of exemption consistent with the findings of this order.

## END OF DOCUMENT